**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

FLAGSTAR BANK, FSB, )
) FILED: MARCH 30, 2009
Plaintiff, ) 09CV1941
) JUDGE KENDALL
vs. ) MAGISTRATE JUDGE KEYS
) CH
FREESTAR BANK, N.A., )
)
Defendant. )

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH SUBPOENA *DUCES TECUM* IN A CIVIL CASE**

Defendant, FREESTAR Bank ("Defendant"), pursuant to Federal Rule of Civil Procedure 45, respectfully submits this Memorandum of Law in support of its Motion to Quash a subpoena *duces tecum* issued by this Court on March 13, 2009 (and served on March 16, 2009).

**Brief Statement and Supporting Authority**

Plaintiff issued a subpoena *duces tecum* in the name of this Court on a third-party law firm in Chicago, Barack Ferrazzano Kirschbaum & Nagelberg, LLP ("Barack Ferrazzano"). *See* Exhibit 1. Defendant retained Barack Ferrazzano for legal counsel and work in connection with Defendant's selection and registration of its new name and mark. The subpoena is invalid and must be quashed because full compliance would require the disclosure of privileged matter.

The language of Federal Rule of Civil Procedure 45 is mandatory. Rule 45(c)(3)(A) states that "[o]n timely motion, the issuing court must quash or modify a subpoena that: . . . (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies."

## I. The Subpoena is Indiscriminately Broad, As Plaintiff Concedes, and As the Privilege Log Confirms

### A. The Subpoena is Indiscriminately Broad

The subpoena issued to the Barack Ferrazzano law firm – the firm that provided legal work to Defendant during the period of Defendant's name change – is broad and sweeping. The subpoena seeks production of "[a]ll documents and things including, but not limited to, correspondence, memoranda, surveys, tests, studies and reports, which evidence, refer or relate to the creation and/or selection of the name Freestar Bank . . . ." *See* Exhibit 1. By specifically including communications (such as correspondence) in its subpoena, Plaintiff seeks matter protected to date by Defendant.

### B. Plaintiff's Attorney Has Conceded The Subpoena Seeks Privileged Matter

In a March 10, 2009 letter to Barack Ferrazzano, Plaintiff's counsel conceded that its (first) subpoena, as written, sought the disclosure of privileged communications: "We appreciate that any communication between Barack Ferrazzano and Freestar Bank, N.A., ("Freestar") regarding the results of such a [trademark] search and/or which include Barack Ferrazzano's legal impressions, conclusions or advice may be privileged." Exhibit 5.

Still, after the United States District Court for the Central District of Illinois issued an order quashing the first subpoena served on Barack Ferrazzano, Plaintiff's counsel re-issued the subpoena with the *same language* and without any regard for (1) the fact that attorney-client communications are privileged; and (2) the fact that its March 10, 2009 correspondence agreed with Defendant's counsel's objections that these communications are privileged.

### C. The Record Confirms That Complying with the Subpoena Would Mean Disclosing Privileged Matter

In his March 27, 2009 Letter of Objections to Plaintiff, Barack Ferrazzano attorney Ed Malone indicated: "I understand you recognize that 'communication between Barack Ferrazzano and Freestar Bank, N.A. regarding the results of a [trademark] search and/or which include Barack Ferrazzano's legal impressions, conclusions or advice may be privileged.' In this case, all of the records regarding the searches performed are contained in or are attached to such privileged communications or reflect privileged communications, as you will see in the enclosed privilege log." Exhibit 2 at 1.

Indeed, Barack Ferrazzano's privilege log (Exhibit 8) contains 59 entries that fall within either the attorney-client privilege or the attorney work-product privilege. Some entries fall into both categories. These entries, associated by tab in the privilege log and later discussed by number on a document-by-document basis, are:

1. **Tab 1**: Handwritten notes for time entry recording a trademark search and analysis for the purpose of providing legal advice, and internal law firm emails concerning same;
2. **Tab 2**: Handwritten notes for time entry recording a trademark search and analysis for the purpose of providing legal advice;
3. **Tab 3**: Handwritten notes for time entry recording trademark analysis for the purpose of providing legal advice;
4. **Tab 4**: Handwritten notes for time entry recording trademark analysis for purpose of providing legal advice and communicating with Defendant;

5. **Tab 5**: Handwritten notes for time entry recording communications with Defendant about potential name change and letter (including fax cover and one-page attachment), dated April 13, 2006, that followed up on conversation with Defendant concerning name change;

6. **Tab 6**: Handwritten notes for time entry recording communications with Defendant about new mark and logo, and internal law firm email concerning Defendant's trademark application;

7. **Tab 7**: Handwritten notes for time entry recording communications with Defendant about trademark application and emails with Defendant concerning the name change and providing legal advice with respect to the trademark application;

8. **Tab 8**: Handwritten notes for time entry recording communications with Defendant about trademark application and emails (some with Defendant, others internal) concerning Defendant's trademark registration;

9. **Tab 9**: Handwritten notes for time entry recording a communication with Defendant and an attorney's legal analysis;

10. **Tab 10**: Handwritten notes for time entry recording a communication with Defendant about Defendant's trademark registration and emails (some with Defendant, one internal) concerning Defendant's trademark registration;

11. **Tab 11**: Handwritten notes for time entry recording communications with Defendant about Defendant's trademark registration and emails (some with Defendant, one internal) concerning Defendant's trademark registration;

12. **Tab 12**: Invoices reflecting legal advice sought by and provided to Defendant (listed as "PNB" because Defendant is wholly owned by PNB Holding Co);

13. **Tab 13**: Internal law firm emails concerning Defendant's request for trademark registration;

14. **Tab 14**: Emails (one with Defendant, one internal) concerning the law firm's "summary and analysis of name search" and the firm's "[r]ecommendation re proposed name";

15. **Tab 15**: Emails (internal and with Defendant) concerning protest letter sent by Plaintiff;

16. **Tab 16**: Email (internal) concerning Plaintiff's protest letter;

17. **Tab 17**: Email concerning Defendant's potential name change;

18. **Tab 18**: Emails with Defendant concerning trademark monitoring;

19. **Tab 19**: Emails with Defendant concerning potential name change and trademark search;

20. **Tab 20**: Email with Defendant concerning potential name change;

21. **Tab 21**: Email with Defendant concerning potential name change.

**II. Plaintiff's Subpoena Must Be Quashed Because It Seeks the Disclosure of Privileged Matter.**

Defendant invokes two types of important privileges here: (1) the attorney-client privilege; and (2) the attorney work-product privilege. The attorney-client privilege is the "oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The central purpose of the attorney-client privilege is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." *Id.* Under the Federal Rules of Evidence, this Court has the authority to interpret the scope of the attorney-client privilege "in the light of reason and experience." Fed. R. Evid. 501.

The attorney work-product privilege is a matter both of federal rule and federal common law. Under Federal Rule of Civil Procedure 26(b)(3)(A), "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial." The purpose of the rule is "so that one party does not gain an unfair advantage over another party by learning the other party's counsel's strategies and legal theories." *Minnesota School Boards Assoc. Ins. Trust v. Employers Ins. Co. of Wausau,* 183 F.R.D. 627, 630 (N.D. Ill. 1999). Moreover, the "'mental impressions, conclusions, opinions or legal theories' of an attorney . . . are 'nearly absolutely protected' and are discoverable only in 'very rare and extraordinary circumstances.'" *Id.* (internal citations omitted); *see also* Fed. R. Civ. P. 26(b)(3)(B).

Defendant retained the services of Barack Ferrazzano for legal advice in connection with its name change. *See* Exhibit 2 (March 27, 2009 Letter of Objections from Barack Ferrazzano attorney Ed Malone). Like any client, it is entitled to protect the content and substance of its communications with its attorneys and the advice it received from Barack Ferrazzano concerning its name change. Any document that reflects those communications or that advice is privileged.

*See Weeks v. Samsung Heavy Industries, Ltd.*, 1996 WL 288511, at *2 (May 30, 1996) ("plaintiff's attorneys would not be entitled to this information during the ordinary course of discovery and they should not be entitled to this information in any form"); *see also Rehling v. City of Chicago*, 207 F.3d 1009, 1019 (7th Cir. 2000) (in addition to protecting statements made by a client to a lawyer, "statements made by the lawyer to the client will be protected in circumstances where those communications rest on confidential information obtained from the client, or where those communications would reveal the substance of a confidential communication by the client") (internal citation omitted).

Each and every entry in the Barack Ferrazzano privilege log reflects a confidential attorney-client communication involving attorneys (or attorneys' assistants) and high-level employees of Defendant. The attorneys and their assistants in the log are, by name:

Attorneys M. McCaleb, S. Bernstein, J. Geiringer, D. Wendte, J. Geiringer, and T. Gniot;

Attorneys' assistants (including paralegals) D. Gentry, B. Gardner, P. Zagrodnik, and K. Houlahan.

The high-level employees of Defendant identified in the log are:

Ed Vogelsinger (President of Defendant FREESTAR Bank) and Scott Dixon (Defendant's Executive Vice President).

On a document-by-document basis, the basis of privilege in this matter is:

1. **Documents (By Number) 1, 4, 5, 6, 7, 9, 11, 14, 24, 25, and 31:** Handwritten notes on the subject of a trademark search and analysis for the purpose of providing legal advice to Defendant, or reflecting communication with Mr. Vogelsinger and Mr. Dixon concerning Defendant's trademark application and registration. If Malcolm

McCaleb's handwritten notes were disclosed in this matter, then his trademark analysis made for the purpose of providing legal advice would also be disclosed. Certainly, such notes are privileged under *Upjohn*, and under the prior decisions of this Court. *See In Re Application For an Order for Judicial Assistance*, 244 F.R.D. 434, 441 (N.D. Ill. 2007) (denying motion to compel production of handwritten notes because "the attorney-client privilege is applicable to many of the documents, which include attorneys' notes and legal impressions based on communications made with the client").

2. **Documents 36, 37, 38, 39, and 40**: Invoices reflecting legal advice sought by and provided to Defendant. Because the invoices reflect specific legal advice (and not just general billing boilerplate), they are privileged. *See Montgomery County v. Microvote Corp.*, 175 F.3d 296, 304 (3rd Cir. 1999) ("The . . . Law Firm's billing records are also privileged because they reveal the nature of the services . . . rendered); *Clarke v. American Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992) ("[c]orrespondence, bills, ledgers, statements, and time records which also reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided, such as researching particular areas of law, fall within the privilege").

3. **Documents 2, 3, 10, 12, 13, 15, 16, 17, 18, 19, 20, 21, 22, 23, 26, 27, 28, 29, 30, 32, 33, 34, 35, 41, 42, 43, 44, 51, 52, 53, 54, 55, 56, 58, and 59:** Emails (some internal) concerning Defendant's request for legal advice

concerning its name change, trademark application, trademark registration, or trademark monitoring. As Ed Malone's March 27, 2009 Letter of Objections makes clear, Defendant retained Barack Ferrazzano to give it advice concerning its name change. Defendant's specific requests for advice, and Barack Ferrazzano's answers, are plainly protected under the attorney-client privilege. See *Rehling*, 207 F.3d at 1019.

4. **Documents 45, 46, 47, 48, 49, and 50**: Emails concerning Plaintiff's protest or cease-and-desist letter that it sent to Barack Ferrazzano in April 2007. Because these emails react to Plaintiff's letter, they are protected under the attorney work-product doctrine. *See* Fed. R. Civ. P. 26(b)(3)(B); *see also Minnesota School Boards Assoc. Ins. Trust*, 183 F.R.D. at 630 (the "'mental impressions, conclusions, opinions or legal theories' of an attorney . . . are 'nearly absolutely protected' and are discoverable only in 'very rare and extraordinary circumstances'").

5. **Document 8**: Correspondence (sent by facsimile, with one page attachment) with client that followed up on telephone conversation concerning Defendant's potential name change. Because the letter directly follows up on a telephone conversation with Defendant concerning the subject matter of Barack Ferrazzano's representation, it is privileged. See *Rehling*, 207 F.3d at 1019.

6. **Document 57**: Email from attorney to client (Scott Dixon) concerning a trademark search. The email concerning this trademark search is privileged because, as Barack Ferrazzano attorney Ed Malone's Letter of

Objections makes clear, "all of [Barack Ferrazzano's] records regarding the searches performed are contained in or attached to . . . privileged communications or reflect privileged communications." *See* Exhibit 2 at 1. Even Plaintiff's counsel has conceded that "any communication between Barack Ferrazzano and Freestar Bank, N.A. . . . regarding the results of [a trademark] search and/or which include Barack Ferrazzano's legal impressions, conclusions or advice may be privileged." Exhibit 5 at 1. *See McKesson Info. Solutions LLC v. Epic Systems Corp.*, 242 F.R.D. 689, 694 (N.D. Ga. 2007) ("the privilege may prevent disclosure of the [patent] studies or reports" -- but not whether a study was done); *see also Chaudhry v. Gallerizzo*, 174 F.3d 394, 403 (4th Cir. 1999) (ruling out disclosure of legal billing records because "the legal bills revealed the identity of the federal statutes researched").

**III. Plaintiff's Subpoena Partly Overlaps With Yet Another Third-Party Subpoena Served By Plaintiff**

Defendant has also filed (and both Defendant and Plaintiff have briefed) a Motion to Quash a Third Party *Duces Tecum* subpoena in the United States District Court for the District of New Hampshire. Plaintiff subpoenaed another third party, The Tracey Edwards Co., Inc. (Tracey Edwards), a marketing consulting company in New Hampshire that worked with Defendant for over one year on Defendant's name change, branding, and advertising. The subpoenas served on Tracey Edwards and Barack Ferrazzano are identical in terms of the documents they seek relating to Defendant's name change. *See* Exhibit 9 (Tracey Edwards subpoena).

The overlap between Defendant's Motion to Quash in this Court and Defendant's Motion to Quash in the District Court for New Hampshire is this: an April 13, 2006 letter, identified as Document No. 8 in Barack Ferrazzano's privilege log. The April 13 letter overlaps because (1) it was addressed from Barack Ferrazzano attorney Malcolm McCaleb to Ed Vogelsinger at FREESTAR Bank; if not considered privileged, it would fall within the scope of the subpoena served on Barack Ferrazzano; and (2) Mr. Vogelsinger sent a handwritten note to Defendant's account executive at Tracey Edwards and attached the April 13 letter from his attorneys to the note; if not considered privileged, the note and attached letter would fall within the scope of the subpoena served on Tracey Edwards in New Hampshire.

The Tracey Edwards subpoena is not before this Court, but for completeness, Mr. Vogelsinger's decision to share the April 13, 2006 letter with Tracey Edwards (in particular, with Jason Knights, an account executive at Tracey Edwards) should not affect the privileged nature of that communication. The "reason" and "experience" of other courts confronted with similar circumstances has led them to consistently allow parties to share, without waiving privilege, confidential communications with independent contractors or third parties who amount to temporary employees. One particularly influential treatise cited approvingly by numerous federal courts explains why:

> "There is little justification for distinguishing between 'permanent' employees who communicate with counsel on matters that are within the scope of their employment, and 'temporary' employees (outside agents) who provide the same services to the corporation, often with the same continuity of employment (although without the same fringe benefits from the employer) and whose communications are equally important to the legal services that counsel renders to the corporate client."

Paul R. Rice, 1 Attorney-Client Privilege in the U.S. § 4:19 (2nd ed. 1999) (Westlaw citation: ACPRIV FED § 4:19); *see also In re Grand Jury Proceedings*, 469 F.3d 24, 26 (1st Cir. 2006) (looking to Rice treatise for guidance); *Energy Capital Corp. v. United States*, 45 Fed. Cl. 481,

490 (Fed. Cl. 2000) (discussing Rice treatise at some length and with approval on issue of treating outside agents, in appropriate circumstances, as regular employees for purposes of privilege).

In this case, the affidavit of Jason Knights (the recipient of the April 13 letter) reveals a working relationship between Knights and Defendant that lasted over a year. *See* Exhibit 10. During that time, Knights has testified that he traveled to Central Illinois to interview Defendant's employees, interviewed bank employees at length, and communicated on multiple occasions with bank management, including Ed Vogelsinger. Exhibit 10. He also testified that he worked with the bank after Tracey Edwards suggested a new name and a new tag line for Defendant, both of which Defendant adopted. That subsequent work involved handling the Defendant's marketing and advertising in local media. Throughout the entire time period (2005 and much of 2006), Knights was the principal contact person for Defendant and his contact was "ongoing" and "regular." Exhibit 10.

In light of Knights' testimony, it made sense for Vogelsinger to share the April 13 letter with him based given its subject matter (the name change). It would be unreasonable for Plaintiff to suggest that doing so constituted a waiver of any sort. *See Energy Capital*, 45 Fed. Cl. at 491 (adopting "the rule" that "[i]n appropriate circumstances, a person may share information received from its attorney with third parties and not waive the attorney-client privilege that would otherwise exempt that information from discovery"); *see also* Rice at § 4:19 ("Logic dictates that communications between third parties and corporate counsel be treated as communications with 'insiders' to the extent that those third parties are 'meaningfully' associated with the corporation.").

**Conclusion**

As the privilege log produced by Barack Ferrazzano reflects, compliance with Plaintiff's subpoena would require disclosing numerous attorney-client communications between that firm and Defendant. Plaintiff has not formally modified its subpoena, though it concedes that complying with it would mean disclosing privileged matter. That alone constitutes grounds for this Court to quash the subpoena under Rule 45(c)(3)(A)(iii). In the alternative, the Court should modify the subpoena by simply excluding from disclosure all of the privileged matter contained in the Barack Ferrazzano privilege log.

Respectfully submitted,

FREESTAR BANK, N.A.
Defendant

by,

s/ Robert A. Kearney
Robert A. Kearney, No. 6225305
ATTORNEY FOR FREESTAR BANK
LAW OFFICE OF ROBERT KEARNEY
514 S. Moore Street
Bloomington, IL 61701
Telephone: (309) 664-7572
Fax: (309) 662-5091
Email: rkearney@kearneyslaw.com

Dated: March 30, 2009

**DEFENDANT FREESTAR BANK'S NOTICE OF FILING, CERTIFICATE OF SERVICE, AND DESIGNATION OF LOCAL COUNSEL UNDER LOCAL RULE 83.15**

Now comes Defendant, FREESTAR Bank, N.A., by and through its attorneys, and gives Plaintiff notice that on March 30, 2009, Robert A. Kearney caused the foregoing **DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH SUBPOENA *DUCES TECUM* IN A CIVIL CASE** to be filed electronically with the Clerk of the Court in this case using the ECF System, which will send notification to the following registered participants of the System: None.

I also certify that I have electronically mailed the filing on this date to the following non-participants in the ECF System: Jordan Fifield, Molly Mack Crandall, Kevin Heinl, Fadi Rustom, Robert Tuttle, Chanille Carswell, and Ed Malone (Barack Ferrazzano). I have also sent the filing by overnight mail to Attorneys Tuttle, Heinl, Crandall, and Carswell at: Brooks Kushman, 1000 Town Center, 22nd Floor, Southfield, MI 48075.

The following attorney is designated as local counsel under Local Rule 83.15:

Thomas J. Piskorski
Seyfarth Shaw
131 S. Dearborn Street
Suite 2400
Chicago, IL 60603
(312) 460-5925
tpiskorski@seyfarth.com

Respectfully submitted,

s/ Robert A. Kearney
Robert A. Kearney, No. 6225305
ATTORNEY FOR FREESTAR BANK
LAW OFFICE OF ROBERT KEARNEY
514 S. Moore Street
Bloomington, IL 61701
Telephone: (309) 664-7572
Fax: (309) 662-5091
Email: rkearney@kearneyslaw.com

Dated: March 30, 2009